## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

HEATHER ELIZABETH HAMOOD,
An Individual,

                                                    Case No. 18-cv-13194

                        Plaintiff,

v.

TRINITY HEALTH CORPORATION, an Indiana
Non-Profit Corporation, INFINITY PRIMARY
CARE, PLLC, a Michigan Professional Limited
Liability Company, ANTHONY VETTRAINO, an
Individual, RAKESH PATEL, an individual, and
DANIEL MERAM, an individual, jointly and
severally

---

Pear Sperling Eggan & Daniels, P.C.
BY:   Jeremy C. Kennedy (P64821)
        Thomas E. Daniels (P29565)
Attorneys for Plaintiff
24 Frank Lloyd Wright Dr., Suite D-2000
Ann Arbor, Michigan 48105
(734) 665-4441

---

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, HEATHER ELIZABETH HAMOOD, by and

through her attorneys PEAR SPERLING EGGAN & DANIELS, P.C., and for her

Complaint states as follows:

1.      The Plaintiff, DR. HEATHER ELIZABETH HAMOOD, MD is

currently a resident of the City of Livonia, Wayne County, Michigan, and at all times

relevant to this litigation was a resident of either Wayne County or Livingston County, both within the jurisdiction of the United States District Court for the Eastern District of Michigan.

2.     Defendant TRINITY HEALTH CORPORATION is a non-profit corporation organized under the laws of the State of Indiana and doing business in Michigan.

3.     Defendant INFINITY PRIMARY CARE, PLLC is a Michigan professional limited liability company organized under the laws of the State of Michigan with its principal place of business located in the City of Livonia, County of Wayne, State of Michigan.

4.     Defendant DR. ANTHONY VETTRAINO is an individual residing within the jurisdiction of the Eastern District of Michigan.

5.     Defendant DR. RAKESH PATEL is an individual residing within the jurisdiction of the Eastern District of Michigan.

6.     Defendant Dr. DANIEL MERAM is an individual residing within the jurisdiction of the Eastern District of Michigan.

7.     Jurisdiction is proper as this case raises federal questions under 42 U.S.C. §2000e-2.

8.     This court has supplemental jurisdiction to hear claims raised under state law pursuant to 28 U.S.C. §1367.

9.    Venue is proper pursuant to 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

10.    Dr. Heather Hamood ("Dr. Hamood") is a graduate of Purdue University and the American University of Antigua College of Medicine.

11.    Following graduation from medical school, where she graduated magna cum laude, Dr. Hamood applied for a residency to complete her training.

12.    Dr. Hamood secured a residency with Trinity Health at St. Mary's Hospital in Livonia, Michigan.  She began her residency in summer of 2015.

13.    During the first year of her residency program, Dr. Hamood was supervised primarily by Dr. Stacy O'Dowd, with Defendant Vettraino occasionally acting as her supervisor.

14.    At the end of her first year of residency, Dr. Hamood's evaluations were very good.  She had a good relationship with her preceptors and supervisors, co-authored an article with Dr. Stacy O'Dowd, was meeting all clinical criteria, and her peers were cooperative.

15.    In addition, Dr. Hamood took and passed each of the first two United States Medical Licensing Examination Step 1 and Step 2 licensing exams.

16.    The start of her second year of Residency in the St. Mary Mercy Livonia Family Medicine Department saw those events change.

17.     Defendant Vettraino became Dr. Hamood's primary supervisor during her second year of her Residency. He had been her advisor previously. He was also her preceptor, and the Associate Program Director of the Family Medicine Department of St. Mary Mercy Hospital in Livonia. His position was one of a supervisor of the program.

18.     On October 25, 2016 Dr. Hamood passed her in-training yearly annual family medical exam.

19.     On or about October 26, 2016, Defendant Vettraino assaulted Dr. Hamood by grabbing her buttocks without consent at the Livonia Family Medicine Outpatient Clinic. Dr. Hamood felt this assault was sexual in nature, as he also touched her hips and back in a sexual manner. Shortly after, Defendant Vettraino told her that if she did not finish her residency, her career was over.

20.     Dr. Hamood took this as a threat by Defendant Vettraino that he would ruin her career and her life if she did not enter into a sexual relationship with him. She refused to degrade herself in that manner, and her second year of residency went downhill after that.

21.     Dr. Hamood was afraid to go to human resources to report Defendant Vettraino out of fear that she would lose her position and her career.

22.     Dr. Hamood was in a vulnerable position, and Defendant Vettraino knew this and took advantage of it.

4

23.     Prior to the battery on her by Defendant Vettraino in October 2016, Dr. Hamood had received favorable evaluations from every department even from Defendant Vettraino.

24.     After this incident, it appears that the medical staff, both male and female staff members, created a very hostile environment for Dr. Hamood.  This was most noticeable when subsequent clinical evaluations suddenly revealed poor clinical performances by Dr. Hamood.

25.     Shortly after Defendant Vettraino's battery of her and her refusal to enter into a sexual relationship with him, Dr. Hamood failed a two-week rotation with one of the Chief Residents, Dr. Daniel Meram.

26.     Dr. Meram later began speaking negatively of Dr. Hamood to their mutual colleagues at the hospital, saying, "Heather can't treat a patient for anything."

27.     Dr. Meram provided no basis or examples for his comment, but despite that, when he put it in her evaluation, Dr. Hamood was failed on her two-week Inpatient Rotation from November 7 to November 20, 2016.

28.     This rotation was the first rotation that Dr. Hamood had ever failed. There were no examples of poor performance, nor grounds given for the failure, other than the unsupported comment from Dr. Meram.

29.     Upon information and belief, Dr. Meram also previously had Dr. Vettraino as his advisor as well, and they are very close.

30.     Upon information and belief, it appears that a degree of vindictiveness entered into the mindset of the supervising clinical staff, punishing Dr. Hamood.

31.     What was most noteworthy was the precipitous drop in how Dr. Hamood scored out on subsequent evaluations.  A normal expected outcome would strongly suggest that there would occur a gradual decrease in clinical performance, if in fact Dr. Hamood was truthfully losing her effectiveness in her clinical skills. However, the degree or drop in performance was so sudden, that there is not a logical explanation.

32.     After Dr. Hamood was assaulted October, 2016, she was informed that she had failed the USMLE Step 3 Final Board exam on her second attempt.

33.     Upon information and belief, Dr. Hamood's score report had been hacked.

34.     Defendant Vettraino used this to attack Dr. Hamood even more, saying that she cannot connect the dots, and this was why she was not passing tests.

35.     Defendant Vattraino would say this in front of other people and would also say comments like "who would want to hack you?", insinuating that Dr. Hamood was fabricating the story.

36.     Defendant Vettraino, however, knew or reasonably should have known that it was entirely possible for Dr. Hamood's account to have been hacked, as he had previously worked at an information technology company called Care Tech

Solutions out of Troy, Michigan, where his duties included assisting in designing a Physician Portal and participated in information technology assessments at various healthcare facilities.

37.     While this was going on, and after his battery of Dr. Hamood, Defendant Vettraino would constantly berate and belittle her in front of her peers, including, and in particular, in front of Defendant Daniel Meram and Dr. O'Dowd. The constant berating was so bad that Dr. Hamood felt like she wanted to die on a daily basis.

38.     Dr. Hamood requested leave of absence to deal with these mental health issues caused by the outrageous conduct of the Defendants.

39.     Leave was granted from December of 2016 through March of 2017.

40.     Dr. Hamood took the leave of absence for mental health reasons, because of the outrageous and brutal abuse she was forced to endure from Dr. Vettraino and others.

41.     Prior to October 2016, Dr. Hamood never had any mental health issues, nor had she ever seen a therapist.

42.     During her leave of absence, Dr. Hamood notified Dr. O'Dowd that she, Dr. Hamood, was seeing a therapist on a weekly basis.

43.     Dr. Hamood was diagnosed by her therapist with severe post-traumatic stress disorder (PTSD), psychological and emotional crisis, physician burnout,

adjustment disorder with depressed mood and anxiety, decreased functioning, memory loss and insomnia. All of this was induced by the Family Medicine Department at St. Mary Mercy in Livonia.

44.    The program was well aware of Dr. Hamood's diagnoses when she returned from her leave of absence in March, 2017.

45.    In March 2017, upon returning from her leave of absence, Dr. Hamood was placed on a three (3) month remediation plan.

46.    Upon information and belief, Dr. Hamood was allegedly placed on the remediation plan because she was failed on her two-week rotation by Dr. Meram. The committee for the remediation plan consisted of Defendant Vettraino, Dr. O'Dowd, and Susan Graham, MSW.

47.    The placement of Dr. Hamood on a remediation plan was unjust, as upon information and belief the decision to put Dr. Hamood on a remediation plan was made by Defendant Vettraino.

48.    Upon information and belief, Dr. Hamood was placed on a remediation plan by Defendant Vettraino solely because she refused his sexual advances when he groped her in October 2016.

49.    Dr. Hamood was directly supervised on the remediation plan by Defendant Vettraino and Defendant Patel.

50.    Defendant Vettraino was overseeing her remediation plan on outpatient floors and Defendant Rakesh Patel was overseeing Dr. Hamood's remediation plan on inpatient floors.

51.    The placement of Dr. Hamood on the remediation plan was clearly retaliatory.

52.    Dr. Hamood did speak with Human Resources, on March 15, 2017. At the time, she went to human resources to complain about the bullying Defendant Meram and non-party Dr. Mona Bhatti. Human resources did absolutely nothing, and Dr. Hamood's program did absolutely nothing.

53.    Dr. Hamood did, however, receive paperwork signed in March 2017 from Trinity Health and signed by Dr. O'Dowd and Dr. John O'Brien, the hospital DIO, saying that Dr. Hamood was going to be permitted to receive an extension of her second year of residency until September 24, 2017 to finish her second year of the program.

54.    Dr. Hamood felt, with good reason, that these people were trying to ruin her career and life, and that they had created a horrific, toxic work environment.

55.    Dr. Hamood's Program Director, Dr. O'Dowd, was aware of extreme stress and mental and physical distress Dr. Hamood was suffering from Defendants Vettraino and Meram, as well as Ms. Bhatti, yet still kept Dr. Hamood working with them.

56.     Despite this, Dr. O'Dowd either did not listen to Dr. Hamood, or did not care about her legitimate concerns, continuing to assign Dr. Hamood to work with Defendants Vettraino and Meram, as well as Ms. Bhatti. As a result of this work schedule, Dr. Hamood's mental health and issues with post-traumatic stress disorder worsened.

57.     When Dr. Hamood brought this to the attention of Dr. O'Dowd, the only response Dr. O'Dowd provided was to tell Dr. Hamood that "sometimes we have to work with people we don't want to."

58.     Following her return from her leave of absence, the abuse and harassment to Dr. Hamood continued.

59.     As time went, Defendant Vettraino and Defendant Patel became increasingly more abusive and harassing to Dr. Hamood.

60.     Since her return from her leave of absence, Defendant Vettraino made increasingly more comments of a sexual nature to Dr. Hamood.

61.     Defendant Patel at one point encountered Dr. Hamood crying, alone in a room. Instead of asking what was wrong, or attempting to comfort Dr. Hamood, as any decent person would have done, Defendant Patel instead told Dr. Hamood, "Let me give you my underwear to wipe away your tears."

62.     Dr. Hamood was disgusted by this clear blatant instance of sexual harassment, as any reasonable person would be.

63.     The treatment and comments to Dr. Hamood were so bad that on May 4, 2017, she woke in the middle of the night with horrible chest pain, shortness of breath, dizziness, sweating and felt as if she was going to die.

64.     Dr. Hamood went to the emergency room that night, where she had a CT scan, along with other tests, and was diagnosed with atypical chest pain and hypokalemia.

65.     Upon information and belief, the Family Medicine Department, specifically Defendants Vettraino, Meram and Patel, who all hold supervisory positions, was purposely trying to fail Dr. Hamood because she refused Defendant Vettraino's sexual advances.

66.     Dr. Hamood was terminated on June 13, 2017.

67.     Following her termination, Dr. Hamood received credit for her two-week rotation in November, 2016 – the one that Dr. Meram had failed her on, resulting in her being placed on a Remediation Plan.

68.     This did not make any sense, as she had never been told she had received credit of the rotation.

69.     When Dr. Hamood was fired on June 13, 2017, Dr. Hamood only received credit for 1.5 years of her residency, not two (2) years of residency

70.     In addition, Trinity Health refused to grant Dr. Hamood the previously-promised extension to complete the first two years of her residency program. She was simply dismissed from the program.

71.     Because Dr. Hamood only received credit for only 1.5 years of her residency, she cannot practice medicine anywhere in the United States, as she needs at least two years to practice medicine in the United States.

72.     Following her termination, Dr. Hamood only had 10 days to appeal her termination.

73.     Dr. John O'Brien, the DIO of the Hospital, appointed a three-person appeals committee to hear Dr. Hamood's appeal in July of 2017. The three physicians appointed by Dr. O'Brien were an obstetrician-gynecologist, an emergency room physician, and an internal medicine physician.

74.     Dr. Hamood was entitled to thirty (30) minutes to state her appeal; despite that Defendant Trinity Health only permitted her fifteen (15) minutes to present her appeal.  At the same time, however, her Program Director, was given forty-five (45) minutes to address the appeals panel.

75.     On August 3, 2017, Dr. Hamood was informed that the decision to not grant her an extension to reach the full two years was final. Dr. Hamood's termination was upheld.

76.     The decision by Defendant Trinity Health was contrary to their previous grant of an extension to Dr. Hamood to allow her to complete her second year of her residency.

77.     Upon information and belief there was at least one significant impropriety with the appeal committee.

78.     Dr. David Steinberger, the internal medicine physician on the committee was in May 2017 named president of a new clinic started by Dr. O'Dowd, that was to open in July of 2017.

79.     The appointment of Dr. Steinberger, and his service on the committee was a major conflict of interest and contrary to Trinity Health policy.

80.     Dr. O'Brien could have appointed any physician but chose to appoint a doctor with a conflict of interest. The appeals committee panel should have been neutral. Clearly it was not.

81.     Dr. Hamood's medical career has been destroyed by the abuse, harassment, and hostile work environment she was forced to endure.

## COUNT I
## SEXUAL HARASSMENT – QUID PRO QUO
## ALL DEFENDANTS

82.     Plaintiff hereby reasserts, realleges, and incorporates by reference herein paragraphs 1-81 as if fully set forth herein.

83.     At the time of the events complained of herein, Dr. Hamood was under contract and worked for Trinity Health.

84.     Defendants Vettraino and Patel made unwanted sexual advances towards Dr. Hamood, and/or made unwanted comments of a sexual nature to Dr. Hamood, as outlined above.

85.     It was implied, by words or actions of the Defendants, that Dr. Hamood's career advancement was conditioned on her accepting the sexual advances made by Defendant Vettraino.

86.     The behavior outlined above was unwelcome by Dr. Hamood, and in fact she rejected advances by Dr. Vettraino and complained about the abuses.

87.     A reasonable person would have found the conduct unwelcome.

88.     Defendant Vettraino was a supervisor, overseeing the medical residency program at St. Mary Mercy Hospital on behalf of Trinity Health.

89.     The conduct complained of herein resulted in a tangible employment action, Dr, Hamood's placement on a remediation plan and subsequent termination.

90.     Dr. Hamood suffered significant harm, including but not limited to the following:

a.  loss of employment and earning potential;

b.  pain, suffering, and emotional distress;

c.  humiliation, mortification, and embarrassment;

d. medical expense;

e. actual wage loss and lost earning capacity; and

f. other injuries and damages and consequences that are found to be related to or arise out of the harassment that develop or manifest themselves during the course of discovery and trial.

91.    The conduct above violates 42 U.S.C. §§2000e *et seq.*

WHEREFORE, on COUNT I Plaintiff, Heather Elizabeth Hamood respectfully requests that this Honorable Court enter judgment in her favor against all Defendants, jointly and severally, and award her economic and non-economic damages in whatever amount this Court deems appropriate, including interest, costs, attorney's fees, and punitive damages.

<u>**COUNT II**</u>
<u>**SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT**</u>
<u>**ALL DEFENDANTS**</u>

92.    Plaintiff hereby reasserts, realleges, and incorporates by reference herein paragraphs 1-91 as if fully set forth herein.

93.    At the time of the events complained of herein, Dr. Hamood was under contract and worked for Trinity Health.

94.    Defendants Vettraino and Patel made unwanted sexual advances towards Dr. Hamood, and/or made unwanted comments of a sexual nature to Dr. Hamood, as outlined above.

95.    The conduct endured by Dr. Hamood was severe, and it was pervasive, with

96.    Dr. Hamood found the conduct to be offensive and disruptive to her ability to work at Trinity Health and Defendant Infinity Primary Care's offices, and in fact she rejected advances by Dr. Vettraino and complained about the abuses.

97.    A reasonable person in Dr. Hamood's position would have found the conduct offensive.

98.    Defendant Vettraino was a supervisor, overseeing the medical residency program at St. Mary Mercy Hospital on behalf of Trinity Health.

99.    The conduct complained of herein resulted in a tangible employment action, Dr, Hamood's placement on a remediation plan and subsequent termination.

100.    Dr. Hamood suffered significant harm, including but not limited to the following:

    a.  loss of employment and earning potential;

    b.  pain, suffering, and emotional distress;

    c.  humiliation, mortification, and embarrassment;

    d.  medical expense;

    e.  actual wage loss and lost earning capacity; and

    f.   other injuries and damages and consequences that are found to be related to or arise out of the harassment that develop or manifest themselves during the course of discovery and trial.

101.   The conduct above violates 42 U.S.C. §§2000e *et seq.*

WHEREFORE, on COUNT II Plaintiff, Heather Elizabeth Hamood respectfully requests that this Honorable Court enter judgment in her favor against all Defendants, jointly and severally, and award her economic and non-economic damages in whatever amount this Court deems appropriate, including interest, costs, attorney's fees, and punitive damages.

### COUNT III – ASSAULT AND BATTERY
### DEFENDANT VETRAINO ONLY

102.   Plaintiff hereby reasserts, realleges, and incorporates by reference herein paragraphs 1-101 as if fully set forth herein.

103.   On or about October 26, 2016 Defendant Vettraino was alone with Dr. Hamood in a precepting room at Infinity Primary Care, LLC.

104.   Defendant Vettraino grabbed Dr. Hamood by the buttocks in a sexual manner, grabbed her hips, and grabbed her back in a sexual manner.

105.   Dr. Hamood did not consent to be touched by Defendant Vettraino.

106.   This touching was offensive to Dr. Hamood, and indeed would be offensive to a reasonable person.

107.   As a direct and proximate result of Defendant Vettraino's assault and battery Dr. Hamood suffered injury and damage, past, present and future, including the following:

a.  loss of employment and earning potential;

b.  pain, suffering, and emotional distress;

c.  humiliation, mortification, and embarrassment;

d.  medical expense;

e.  actual wage loss and lost earning capacity; and

f.  other injuries and damages and consequences that are found to be related to or arise out of the harassment that develop or manifest themselves during the course of discovery and trial.

WHEREFORE, on COUNT III Plaintiff, Heather Elizabeth Hamood respectfully requests that this Honorable Court enter judgment in her favor against Defendant Anthony Vettraino, jointly and severally, and award her economic and non-economic damages in whatever amount this Court deems appropriate, including interest, costs, attorney's fees, and punitive damages.

## COUNT IV – STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ALL DEFENDANTS

108.   Plaintiff hereby reasserts, realleges, and incorporates by reference herein paragraphs 1-107 as if fully set forth herein.

109.   Defendant's conduct as outlined above was intentional.

110.   Defendant's conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

111.   Defendant's conduct as outlined above was for an ulterior motive or purpose.

112.   Defendant's conduct resulted in severe and serious emotional distress, including but not limited to:

a.  Post-traumatic stress disorder

b.  Anxiety,

c.  psychological and emotional crisis,

d.  physician burnout,

e.  adjustment disorder with depressed mood and anxiety,

f.  decreased functioning,

g.  memory loss

h.  insomnia; and

i.  obsessive compulsive disorder.

113.   The bullying and abuse were so bad that Dr. Hamood attempted suicide in May, 2017.

114.   Defendants Trinity Health and Infinity Primary Care knew or reasonably should have known about the conduct and took no steps to prevent the conduct.

115.   As a direct and proximate result of Defendants' conduct, Dr. Hamood suffered injury and damage, past, present and future, including the following:

    a.  loss of employment and earning potential;

    b.  pain, suffering, and emotional distress;

    c.  humiliation, mortification, and embarrassment;

    d.  medical expense;

    e.  actual wage loss and lost earning capacity; and

    f.  other injuries and damages and consequences that are found to be related to or arise out of the harassment that develop or manifest themselves during the course of discovery and trial.

WHEREFORE, on COUNT IV Plaintiff, Heather Elizabeth Hamood respectfully requests that this Honorable Court enter judgment in her favor against all Defendants, jointly and severally, and award her economic and non-economic damages in whatever amount this Court deems appropriate, including interest, costs, attorney's fees, and punitive damages.

## COUNT V
## STATE LAW SEXUAL HARASSMENT – QUID PRO QUO
## ALL DEFENDANTS

116.   Plaintiff hereby reasserts, realleges, and incorporates by reference herein paragraphs 1-115 as if fully set forth herein.

117.   At the time of the events complained of herein, Dr. Hamood was under contract and worked for Trinity Health.

118.   Defendants Vettraino and Patel made unwanted sexual advances towards Dr. Hamood, and/or made unwanted comments of a sexual nature to Dr. Hamood, as outlined above.

119.   It was implied, by words or actions of the Defendants, that Dr. Hamood's career advancement was conditioned on her accepting the sexual advances made by Defendant Vettraino.

120.   The behavior outlined above was unwelcome by Dr. Hamood, and in fact she rejected advances by Dr. Vettraino and complained about the abuses.

121.   A reasonable person would have found the conduct unwelcome.

122.   Defendant Vettraino was a supervisor, overseeing the medical residency program at St. Mary Mercy Hospital on behalf of Trinity Health.

123.   The conduct complained of herein resulted in a tangible employment action, Dr, Hamood's placement on a remediation plan and subsequent termination.

124.   Dr. Hamood suffered significant harm, including but not limited to the following:

   a.  loss of employment and earning potential;

   b.  pain, suffering, and emotional distress;

   c.  humiliation, mortification, and embarrassment;

   d.  medical expense;

   e.  actual wage loss and lost earning capacity; and

   f.  other injuries and damages and consequences that are found to be related to or arise out of the harassment that develop or manifest themselves during the course of discovery and trial.

125.   The conduct above violates Michigan's Eliot Larsen Civil Rights Act.

WHEREFORE, on COUNT V Plaintiff, Heather Elizabeth Hamood respectfully requests that this Honorable Court enter judgment in her favor against all Defendants, jointly and severally, and award her economic and non-economic damages in whatever amount this Court deems appropriate, including interest, costs, attorney's fees, and punitive damages.

## COUNT VI
## STATE LAW SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
## ALL DEFENDANTS

126.   Plaintiff hereby reasserts, realleges, and incorporates by reference herein paragraphs 1-125 as if fully set forth herein.

127.   At the time of the events complained of herein, Dr. Hamood was under contract and worked for Trinity Health.

128.   Defendants Vettraino and Patel made unwanted sexual advances towards Dr. Hamood, and/or made unwanted comments of a sexual nature to Dr. Hamood, as outlined above.

129.   The conduct endured by Dr. Hamood was severe, and it was pervasive, with

130.   Dr. Hamood found the conduct to be offensive and disruptive to her ability to work at Trinity Health and Defendant Infinity Primary Care's offices, and in fact she rejected advances by Dr. Vettraino and complained about the abuses.

131.   A reasonable person in Dr. Hamood's position would have found the conduct offensive.

132.   Defendant Vettraino was a supervisor, overseeing the medical residency program at St. Mary Mercy Hospital on behalf of Trinity Health.

133.   The conduct complained of herein resulted in a tangible employment action, Dr, Hamood's placement on a remediation plan and subsequent termination.

134.   Dr. Hamood suffered significant harm, including but not limited to the following:

   a.  loss of employment and earning potential;

   b.  pain, suffering, and emotional distress;

c. humiliation, mortification, and embarrassment;

d. medical expense;

e. actual wage loss and lost earning capacity; and

f. other injuries and damages and consequences that are found to be related to or arise out of the harassment that develop or manifest themselves during the course of discovery and trial.

135. The conduct above violates Michigan's Eliot Larsen Civil Rights Act.

WHEREFORE, on COUNT VI Plaintiff, Heather Elizabeth Hamood respectfully requests that this Honorable Court enter judgment in her favor against all Defendants, jointly and severally, and award her economic and non-economic damages in whatever amount this Court deems appropriate, including interest, costs, attorney's fees, and punitive damages.

WHEREFORE, the Plaintiff HEATHER ELIZABETH HAMOOD hereby respectfully requests that this Honorable Court enter judgment in her favor on her Complaint and grant her the following relief:

a. Award Plaintiff economic damages in such amount as the court finds her to be entitled;

b. Award Plaintiff non-economic, exemplary and punitive damages in such amount as the court finds her to be entitled;

c.  Award Plaintiff her costs and attorney fees incurred in bringing this

case;

d.  Award Plaintiff interest on the judgment; and

e.  Grant Plaintiff all other relief to which it she entitled to obtain by law

or equity.

Respectfully Submitted,

PEAR SPERLING EGGAN & DANIELS, P.C.

Dated: October 12, 2018          BY:   /s/ Jeremy C. Kennedy (P64821)
                                 Jeremy C. Kennedy (P64821)
                                 Attorneys for Defendant/Counter-Plaintiff
                                 24 Frank Lloyd Wright Drive, Ste D-2000
                                 Ann Arbor, MI  48105
                                 (734) 665-4441
                                 jkennedy@psedlaw.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all matters so triable.

Respectfully Submitted,

PEAR SPERLING EGGAN & DANIELS, P.C.

Dated: October 12, 2018          BY:   /s/ Jeremy C. Kennedy (P64821)
                                 Jeremy C. Kennedy (P64821)
                                 Attorneys for Defendant/Counter-Plaintiff
                                 24 Frank Lloyd Wright Drive, Ste D-2000
                                 Ann Arbor, MI  48105
                                 (734) 665-4441
                                 jkennedy@psedlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2018, I caused the electronic filing of the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys and parties who are on the list to receive notifications for this case.

/s/ *Margaret A. Michael*
Margaret A. Michael
Legal Assistant to Jeremy C. Kennedy
24 Frank Lloyd Wright Dr., Suite D-2000
Ann Arbor, MI 48105
(734) 665-4441