UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| HEATHER ELIZABETH HAMOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-13194 |
| | ) | Judge:  Marianne O. Battani |
| v. | ) | |
| | ) | |
| TRINITY HEALTH CORPORATION, an | ) | |
| Indiana Non-Profit Corporation, INFINITY | ) | |
| PRIMARY CARE, PLLC, a Michigan | ) | |
| Professional Limited Liability Company, | ) | |
| ANTHONY VETTRAINO, an individual, | ) | |
| RAKESH PATEL, an individual, and DANIEL | ) | |
| MERAM, an individual, jointly and severally, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

/

**DEFENDANT TRINITY HEALTH AND DR. PATEL'S REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

**I.**     **PLAINTIFF HAS FAILED TO STATE A CLAIM FOR HOSTILE WORK ENVIRONMENT AGAINST THE HOSPITAL AND DR. PATEL.**

Plaintiff's admitted failure to provide any notice of alleged harassment by either physician *while she was employed* is fatal to her claims under both federal and state law. Plaintiff's Response contains no facts or law to show that either Dr. Patel or Dr. Vettraino were her "supervisors" under Title VII. An employer may only be liable if it has notice of or is otherwise aware of illegal harassment and fails to take steps to remedy it. *See Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). Plaintiff admitted she never complained of or reported any of the alleged harassment until she after she was terminated from the residency program. The fact that Plaintiff raised these allegations during her appeal does not change the analysis. Even then, Plaintiff alleged only that Dr. Vettraino had "squeezed her buttocks without consent" while he was "showing her a back maneuver regarding a patient on the sacroiliac joint." *[Ex. SS]*. Plaintiff never alleged that Dr. Vettraino made any inappropriate sexual comments or sexual advances toward her or ever (explicitly or implicitly) asked her to engage in any type of sexual or romantic relationship. Plaintiff has no evidence showing that the Hospital had any notice of the matters she claims were sexual harassment until after she was terminated.[1] Her hostile work environment claim against the Hospital fails as a matter of law.

Under Title VII, only if the alleged harasser is the employee's "supervisor," may the employer be held vicariously liable without prior notice. *Id.*[2] Plaintiff fails to offer any facts to show that Dr. Patel or Dr. Vettraino fall within Title VII's narrow definition of "supervisor." In

---

[1] Plaintiff acknowledges that the panel deciding her appeal was independent and neutral, made up of non-Hospital employees and different decision-makers. Plaintiff has no evidence that the panel was biased in any way.

[2] Michigan and federal law differ on the issue of notice. Under the Elliott-Larsen Civil Rights Act, there is no employer liability in the absence of notice *regardless* of whether the alleged harasser is a supervisor or a co-worker. *See Chambers v. Trettco, Inc*, 463 Mich 297 (2000).

fact, Plaintiff does not even address this argument and the clear requirements for a determination of supervisory status set forth in *Vance* and applied by the Sixth Circuit in *AutoZone.* The record evidence is unrebutted that neither Dr. Vettraino nor Dr. Patel were "empowered by the employer to take tangible employment actions against the complaining employee." *Id.* Neither physician had the authority to effect "a significant change in [Plaintiff's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 429 quoting *Ellerth*, 524 U.S. at 761. The mere fact that these physicians may have had the "ability to influence" the ultimate decision-makers ability or to direct or critique Plaintiff's tasks does not turn these physicians into a "supervisor." *Id.* at 439.  Nor does the fact that they may have had the "ability to conduct performance evaluations" make them "supervisors" under Title VII. *See Equal Employment Opportunity Commission v. AutoZone, Inc.,* 692 Fed. Appx. 280 (2017). To the contrary, Plaintiff admits that Dr. O'Dowd had the authority to take tangible employment actions against her, effect significant changes in her employment status, and who in fact made the decision to terminate her from the residency program. Since neither Dr. Vettraino nor Dr. Patel were supervisors as a matter of law, the Hospital cannot be held liable for their alleged conduct.

Plaintiff's Response also does not address the flaws in her claims against Dr. Patel. The Response does not argue or assert that the single, isolated comment allegedly made by Dr. Patel was sufficiently "severe" or "pervasive" to meet the threshold for sexual harassment. On its face, this comment is not sexual or even offensive, let alone "extreme."

Similarly, looking at the totality of the circumstances, no reasonable juror could find that Dr. Vettraino's consented to demonstration of a sacroiliac joint examination by palpitation was an offensive touching, let alone an extreme isolated incident akin to rape or gruesome sexual

assault sufficiently severe to give rise to a hostile work environment claim. The sacroiliac joint is directly underneath the buttocks and palpitation of this joint requires a touching of the buttocks. Plaintiff's after the fact allegation is legally insufficient to state a claim for sexual harassment.

Plaintiff's emphasis on the fact Dr. Vettraino entered into a consent order to resolve the licensing complaint she filed against him is misplaced. The First Superseding Complaint (the basis for the Consent Order) only alleges that Dr. Vettraino's *failure to have a chaperone present* during the exam failed to conform to the normal standards of acceptable and prevailing practice for a preceptor and advisor. *See Pl. Ex. 19 at ¶¶ 7-8*. There was no finding or admission that the back exam was inappropriate or sexual in nature. The settlement of Plaintiff's licensing complaint is of no consequence in this case.

Plaintiff's attempt to analogize Dr. Vettraino's alleged actions to that found to be actionable in *Radtke v. Everett*, 442 Mich. 368 (1993), is also misplaced. In *Radtke*, the Court found that the single incident at issue – where the owner allegedly "physically restrained [plaintiff] by firmly placing his arm around her neck and holding her down," "caress[ed] plaintiff's neck" and "then attempted to kiss her by grabbing her neck and pushing his face toward hers" – was sufficient under the circumstances because the defendant-harasser was both the owner and sole employer and the plaintiff was the only employee. *Id.* at 375-376.

The Court's holding and reasoning in *Radtke* has no application to the instant case. This was not a small and "closely knit working environment." Unlike in *Radtke,* Dr. Vettraino was not Plaintiff's employer. In fact, he was not even a Hospital employee. More importantly, recourse to the employer, the Hospital and its Human Recourses department, was neither futile nor "fruitless." It is undisputed that the Hospital prohibited harassment and Plaintiff had access to a robust complaint and remediation procedure. Indeed, Plaintiff *had* filed a complaint of bullying

3

and workplace harassment against other residents to Hospital Human Resources and made critical, work-related comments about other physicians, including Drs. O'Dowd, Dr. Vettraino, Dr. Patel while she was employed. When Plaintiff reported the alleged event with Dr. Vettraino after she was terminated, her concerns were also fully investigated. The conduct here is also not remotely comparable to a "rape or violent sexual assault," the only examples in *Radtke* of the rare, severe incidents that may, standing alone, be enough to create a hostile work environment.

II.    **PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE OF QUID PRO QUO SEXUAL HARASSMENT.**

Plaintiff's assertion that she has stated a claim for quid pro quo sexual harassment is contradicted by her own testimony.[3] Plaintiff clearly and unequivocally testified that no one ever conditioned any term or condition of her employment on acceptance or rejection of sexual advances toward her. *[Pl. at 313, 315]*. Plaintiff's attempt to revive her claim with a self-serving, contradictory affidavit is disingenuous. Plaintiff's "belief" that her continuation in the program was "linked to sexual favors" is nonsensical. There is absolutely no evidence that anyone associated with the residency program ever "implicitly" requested sexual favors or a sexual relationship with Plaintiff. No reasonable jury could find that the back exam and the random, non-sexual comments described by Plaintiff for the first time at her deposition as the alleged sexual harassment were an explicit or implicit demand that Plaintiff engage in a sexual relationship with Dr. Vettraino. There is also absolutely no evidence that anyone "retaliated" against Plaintiff for refusing any alleged sexual advances by Dr. Vettraino. Nor would a reasonable jury believe that Plaintiff's continuation in the residency program was contingent on

---

[3] Plaintiff's Complaint alleges a claim against Dr. Patel for quid pro quo sexual harassment. In her response, Plaintiff offers no argument or evidence that Dr. Patel ever engaged in quid pro quo sexual harassment. Plaintiff appears to have abandoned any such claim against Dr. Patel. Dr. Patel is entitled to summary judgment on Count I.

Plaintiff engaging in any such relationship. Plaintiff completely ignores the fact that her failure to continue with residency was based on her own objective failures and shortcomings. Despite many attempts by the residency leadership and faculty, including Drs. Patel and Vettraino, to work with her and help her succeed,  Plaintiff failed the national licensing exam three times (the maximum number of attempts) and failed to show required improvement in a remediation program designed to improve her inadequate and unsafe diagnostic and treatment skills. By virtue of her licensing examination failures alone, Plaintiff could never progress in the residency program and can never obtain a medical license from the State of Michigan.[4] Plaintiff's attempt to somehow link her termination from the residency program and her inability to become a licensed physician to unrelated and isolated events is entirely unsupported by the voluminous record evidence. Her claims for quid pro quo sexual harassment must be dismissed. Plaintiff has also offered no basis for liability against the Hospital for quid pro quo sexual harassment. Again, it is undisputed that Plaintiff never complained about any alleged sexual harassment, let alone quid pro quo sexual harassment. This fact alone is fatal to Plaintiff's claim against the Hospital.

Respectfully submitted,

CLARK HILL PLC

By: */s/Carly O. Machasic*
Carly O. Machasic (P75572)
500 Woodward Avenue, Suite 3500
Detroit, Michigan  48226
(313) 965-8464
cmachasic@clarkhill.com
Attorneys for Defendant

Date:  February 20, 2019

---

[4] Plaintiff cannot analogize herself to two male residents who were also on remediation plans or probation. Plaintiff cites to **nothing** in the record regarding these two residents or the circumstances leading to their alleged remediation plans and/or probation. Such unsupported allegations cannot be considered by this Court at the summary judgment stage.

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

*s/Carly O. Machasic*
Carly O. Machasic (P75572)
cmachasic@clarkhill.com
