UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER ELIZABETH
HAMOOD,

        Plaintiff,

v.

TRINTY HEALTH
CORPORATION, et al.,

        Defendants.

                                    /

Case No. 2:18-cv-13194

HONORABLE STEPHEN J. MURPHY, III

## OMNIBUS OPINION AND ORDER

Plaintiff brought the present action against Defendants for violating Title VII and state laws. ECF 1. Defendants moved for summary judgment in December 2019. ECF 23, 25. Almost two years later, the case was reassigned to the undersigned. 20-AO-053. The Court then ordered the parties to mediation with Magistrate Judge Patti, ECF 37, 38, but the mediation failed. The Court reviewed the briefs for the pending summary judgment motions and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f). For the following reasons, the Court will grant in part and deny in part Defendants' summary judgment motions.

### BACKGROUND

Saint Mary Mercy is a hospital within the Trinity Health System. ECF 25-3, PgID 515. The hospital operates several residency programs. For its Family Medicine Residency Program, the hospital contracts with Infinity Primary Care, a private corporation, to observe and teach the hospital's residents. *Id.*; ECF 25-41, PgID 899.

1

Infinity is a separate entity, distinct from Trinity or the hospital. ECF 25-41, PgID 901.

After graduating from medical school, Plaintiff joined Saint Mary Mercy Hospital as a resident physician in the Family Medicine Residency Program. ECF 25-2 (first year contract); ECF 25-11 (second year contract). During her first year of residency, Plaintiff had no issues with any of the faculty members. ECF 25-10, PgID 656. But in her second year of residency, Plaintiff reported harassment in the form of bullying from fellow residents and many members of the staff. ECF 25-42, PgID 953–54. At the time, she made no complaint about Doctor Vettraino. ECF 25-10, PgID 689. Instead, she complained that Doctor Patel told her that her sign-outs were not concise and that, in general, there was a tense work environment. ECF 25-45, PgID 953.

Later that second year, Plaintiff notified her residency Program Director that she requested Doctor Vettraino no longer serve as her preceptor and advisor because he was allegedly a bully. ECF 25-27, PgID 809. A few days later, Plaintiff informed the Program Director again that Doctor Vettraino was "very critical" about her work. ECF 25-28, PgID 811.

Plaintiff's second year in the program ended early because she failed to satisfy the program's requirements. ECF 25-48, PgID 963. Apart from having poor evaluations, *see generally* ECF 25-12, 25-13, 25-14, 25-15, 25-18, 25-24, 25-25, 25-34, Plaintiff took an extended leave of absence, ECF 25-17, PgID 740, and was placed on a remediation plan, ECF 25-16, PgID 738; ECF 25-19, 25-20, 25-21, 25-22. Remediation plans, although rare, are used as a "focused learning tool" to help

2

struggling residents. ECF 25-4, PgID 575. Under a remediation plan, "[i]f [a] resident's performance remains unsatisfactory after a reasonable opportunity to correct the[ir] deficienc[ies], [then] the resident [is terminated]." ECF 25-26, PgID 806.

On top of those struggles, Plaintiff failed the USMLE Step 3 for a third time, ECF 25-10, PgID 693.[1] All residents had to pass the USMLE Step 3 or have a full medical license by their second year of residency. ECF 25-23, PgID 786. Because of the third failing score, the State of Michigan bars Plaintiff from receiving a state medical license. ECF 25-10, PgID 694. In the end, the residency's Program Director recommended Plaintiff's termination from the program because of Plaintiff's "lack of progress on her remediation plan and the [third] failed attempt on USMLE Step 3[.]" ECF 25-43, PgID 948.

After Plaintiff was terminated and thus no longer an employee of Saint Mary Mercy Hospital, she appealed the decision. ECF 25-49. During the appeal, Plaintiff alleged—for the first time—that Doctor Vettraino "physically/sexually abused" her. *Id.* at 970. Plaintiff specifically alleged the Doctor Vettraino "squeezed [her] buttocks without her consent" while showing her "a back maneuver regarding a patient on the sacroiliac joint[.]" *Id.* at 969. Plaintiff also alleged—for the first time—that Doctor Patel made a comment sexually harassing her. *Id.* at 971–72. Put differently, Plaintiff

---

[1] The USMLE Step III is a required exam for Michigan's medical licensing board. ECF 23-9, PgID 213; ECF 25-10, PgID 693–94.

3

informed the hospital about her alleged sexual assault and harassment *after* she was terminated. ECF 25-10, PgID 683, 691.

In any event, the appeal panel found the termination was "fair and reasonable[,]" and upheld Plaintiff's termination. *Id.* at 700. And the Hospital's human resources department later investigated Plaintiff's allegations and interviewed Doctors Vettraino and Patel. ECF 25-50.

At the time of the alleged sexual assault and harassment, Doctor Vettraino was an employed physician with Infinity and was part of the core faculty for the residency program. ECF 25-3, PgID 523; ECF 25-5, PgID 593. As a core faculty member, Doctor Vettraino advised residents, attended weekly educational meetings, and precepted residents. ECF 25-3, PgID 516, 559; ECF 25-5, PgID 593. During the same time, Doctor Patel had no relationship with Infinity and no leadership role with the hospital. ECF 25-42, PgID 925. Instead, Doctor Patel was an internal medicine physician at the hospital and taught as a rotational faculty member. *Id.* at 925, 927; ECF 25-5, PgID 598. Thus, Doctor Patel observed and evaluated residents on in-patient rotations. ECF 25-42, PgID 927.

Faculty members like Doctors Vettraino and Patel had no "authority to hire, fire, discipline, or otherwise affect the terms and conditions of [a] resident's employment relationship." ECF 25-3, PgID 560. Only the Program Director had the power to decide whether to terminate a resident from the program. ECF 25-4, PgID 577. And only the Designated Institutional Officer could overrule the Program Director's decision. *Id.*

Shortly after Plaintiff's appeal, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF 25-10, PgID 700. The EEOC charge alleged only that Saint Mary Mercy Hospital discriminated and retaliated against her. ECF 23-32, PgID 400–04. Plaintiff made no charge against Infinity Primary Care. *See id.*; ECF 23-10, PgID 266–67 (Plaintiff's deposition admitting that she did not file any charge against Infinity Primary Care). The EEOC ultimately found that the evidence did not support Plaintiff's allegations. ECF 25-10, PgID 701.

Eventually, Plaintiff sued Infinity, Trinity, and Doctors Vettraino and Patel in federal court. ECF 1. Plaintiff alleged Title VII claims of quid pro quo sexual harassment and hostile work environment against all Defendants. *Id.* at 13–17. She also asserted assault and battery claims against Doctor Vettraino, *Id.* at 17–18, and intentional infliction of emotional distress and Elliott-Larsen Civil Rights Act ("ELCRA") claims against all Defendants, *Id.* at 18–25.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for

5

trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Court will first address the Title VII claims against each Defendant separately. After, the Court will address the state law claims.

I. <u>Title VII Claims Against Infinity Primary Care</u>

Infinity is entitled to summary judgment on the Title VII claims because Plaintiff did not exhaust her administrative remedies before suing Infinity. Before suing under Title VII, Plaintiff was required to timely file a charge of discrimination with the EEOC. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citations omitted). Because Michigan participates in a work-sharing arrangement with the EEOC, the deadline to file the charge is three hundred days after the conduct. *Schoneboom v. Michigan*, 28 F. App'x 504, 505 (6th Cir. 2002) (citations omitted). The filing requirement is mandatory because "a Title VII plaintiff cannot

6

bring claims in a lawsuit that were not included in [her] EEOC charge." *Younis*, 610 F.3d at 361 (citations omitted).

Plaintiff's EEOC charge alleged only that Saint Mary Mercy Hospital discriminated and retaliated against her. ECF 23-32, PgID 400–04. Plaintiff made no claim against Infinity. *See id.*; ECF 23-10, PgID 266–67. The EEOC filing charge requirement "serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Younis*, 610 F.3d at 361 (citation omitted). Without an EEOC charge against Infinity, the purpose is frustrated because Infinity is not an employee or partner of Trinity or Saint Mary Mercy Hospital. ECF 23-41, PgID 453, 455; ECF 25-3, PgID 515 (explaining that Trinity and Infinity are independently owned). Thus, the Court must deny Plaintiff's Title VII claims against Infinity because doing so would allow "a Title VII action to encompass claims outside the reach of the EEOC charges[,] would deprive the charged party of notice[,] and would frustrate the EEOC's investigatory and conciliatory role." *Younis*, 610 F.3d at 361 (citation omitted). Infinity is therefore entitled to summary judgment on the Title VII claims.

II.   Title VII Claims Against Doctors Vettraino and Patel

Next, the Court will grant summary judgment to Doctors Vettraino and Patel for the Title VII claims. Simply put, "[a]n individual cannot be held personally liable for violations of Title VII." *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012) (citing *Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 405 (6th Cir. 1997)). In the rare

7

instances an individual can be liable under Title VII, the individual still must qualify as an employer. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001). But Doctors Vettraino and Patel did not employ Plaintiff, only Trinity did. ECF 23-10, PgID 269; ECF 23-2, 23-11 (employment agreements). The Court will therefore grant summary judgment to Doctors Vettraino and Patel on the Title VII claims.

III. <u>Title VII Claims Against Trinity Health Corporation</u>

Plaintiff alleged two Title VII claims against Trinity: hostile work environment and quid pro quo sexual harassment. ECF 1, PgID 13–17. The Court will first address the hostile work environment claim.

    A. *Hostile Work Environment*

For a hostile work environment claim under Title VII, Plaintiff must establish:

> (1) that she was a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment; and (5) that there is a basis for employer liability.

*Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

For the fifth element, "an employer's liability for such harassment may depend on the status of the harasser." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Id.* But if the harasser is a supervisor and a "tangible employment action" occurs, then the employer is strictly liable. *Id.*

The Supreme Court has defined a "sharp line between co-workers and supervisors" for Title VII purposes. *Vance*, 570 U.S. at 440. "An employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Id.* at 424. "Tangible employment actions are those that 'effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *EEOC v. AutoZone, Inc.*, 692 F. App'x 280, 283 (6th Cir. 2017) (per curiam) (citing *Vance*, 570 U.S. at 431). Simply having the "ability to influence" a supervisor or "conduct performance evaluations" do not turn an employee into a supervisor. *AutoZone, Inc.*, 692 F. App'x at 283–84. And "the ability to direct another employee's tasks" does not turn an employee into a supervisor. *Vance*, 580 U.S. at 439.

Doctors Vettraino and Patel were not Plaintiff's supervisors for Title VII liability purposes. Plaintiff claimed that the alleged sexual harassment from Doctors Vettraino and Patel began during her second year of residency. ECF 25-10, PgID 656. During that year, Doctor Vettraino was an employed physician with Infinity. ECF 25-5, PgID 593. As an employed physician, he advised residents, attended weekly educational meetings, and precepted the residents. *Id.* at 593. During Plaintiff's second year, Doctor Patel also was "hospital faculty" who taught hospital medicine and lacked any leadership role with Saint Mary Mercy Hospital. ECF 25-42, PgID 925, 927.

9

Faculty members such as Doctors Vettraino and Patel had no "authority to hire, fire, discipline, or otherwise affect the terms and conditions of [a] resident's employment relationship." ECF 25-3, PgID 560. Only the Program Director had the power to decide whether to not renew or terminate a resident. ECF 25-4, PgID 577. And only the Designated Institutional Officer could override the Program Director's decision. *Id.* In short, Doctors Vettraino and Patel lacked any power "to take tangible employment actions" "such as hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities[.]" *AutoZone, Inc.*, 692 F. App'x at 283 (citing *Vance*, 570 U.S. at 431). Although the Doctors' positions involved formal evaluations of Plaintiff, ECF 25-25, and precepting residents, ECF 25-5, PgID 593, those tasks do not turn Doctors Vettraino and Patel into supervisors under Title VII. *Vance*, 580 U.S. at 439; *AutoZone, Inc.*, 692 F. App'x at 283–84. Because Doctors Vettraino and Patel were not "supervisors" under Title VII, strict liability does not apply.

Instead, Trinity "is liable only if it was negligent in controlling working conditions." *Vance*, 570 U.S. at 424. Under the negligence standard, "an employer must have known, or should have known, 'of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'" *Zeller v. Canadian Nat. Railway Co.*, 666 F. App'x 517, 525–26 (6th Cir. 2016) (quoting *Hafford*, 183 F.3d at 513). But Plaintiff never reported any sexual harassment from Doctors Vettraino or Patel until *after* her employment was terminated and she was no longer in the residency program. ECF 25-10, PgID 683. As a result, Trinity could not have known

10

about the alleged sexual harassment until then. *See Collette v. Stein-Mart, Inc.*, 126 F. App'x 678, 684 (6th Cir. 2005) (holding that an employer could not have known about alleged sexual harassment until the harassment was reported to upper management).

That said, the Sixth Circuit has found that prior sexual harassment complaints over several months could create an issue of material fact as to whether an employer should have known about harassment. *Minnich v. Cooper Farms*, 39 F. App'x 289, 294–95 (6th Cir. 2002) (per curiam). But that is not the case here. The only alleged harassment that Trinity knew about relating to Doctors Vettraino or Patel was Plaintiff's March 2017 human resources complaint. In that complaint, Plaintiff reported harassment from fellow residents and faculty based on bullying. ECF 25-42, PgID 953–54. Still, at that time, Plaintiff made no complaint about Doctor Vettraino. ECF 25-10, PgID 689. And Plaintiff only made a passing reference about Doctor Patel—who had said that her sign-outs were not concise. ECF 25-42, PgID 953. None of the alleged harassment was sexual. *Id.*

In the end, the undisputed facts show that Trinity had no notice of the alleged sexual harassment or assault until after Plaintiff's termination. ECF 25-10, PgID 683. Because of that, the hospital had no way to know of or investigate Plaintiff's allegations. *See Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 776–77 (6th Cir. 1996) (holding that because an employee did not tell her employer about the harassment until after she resigned, the employee failed to provide the employer with notice). Although *Hartlein* applied the ELCRA and not Title VII, the same reasoning used to

11

decide that case applies here. 83 F.3d at 775 ("Michigan courts have generally looked to federal precedent for guidance in interpreting the ELCRA."); *see Minevich v. Spectrum Health-Meier Heart Cnt.*, 1 F. Supp. 3d 790, 802–03 (W.D. Mich. 2014) (applying *Hartlein*'s notice holding to a Title VII hostile work environment claim). As a result, no jury could find that Trinity had notice of Plaintiff's sexual harassment and assault allegations.

The Court will therefore grant summary judgment for Trinity because there is no dispute of material fact that the fifth factor is not satisfied. Because the Court's analysis on the fifth factor resolves the summary judgment motion, the Court will not rule on the other factors.

### B. Quid Pro Quo Sexual Harassment

To succeed on a quid pro quo sexual harassment claim under Title VII, Plaintiff must establish:

> 1) that [she] was a member of a protected class; 2) that [she] was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) that [her] submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of *respondeat superior* liability.

*Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000) (emphasis in original) (citing *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 186 (6th Cir. 1992)).

In brief, the Court will deny the quid pro quo claim for the same reasons that the Court denied the hostile work environment claim: Doctors Vettraino and Patel

12

were not Plaintiff's supervisors. Under a Title VII quid pro quo sexual harassment claim, the supervisor must possess "the authority to hire, fire, transfer, and promote." *Wisniewski v. Pontiac Sch. Dist.*, 862 F. Supp. 2d 586, 597 (E.D. Mich. 2012) ("Because McAllister was not a "supervisor" within the meaning of Title VII and did not control job benefit or detriments, his behavior cannot form the basis of a quid pro quo claim."). Because quid pro quo sexual harassment "occurs when an employee's submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to avoid an adverse employment action," the supervisor requirement is consistent. *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 440 (6th Cir. 2008). Because Doctors Vettraino and Patel were not "empowered by [Trinity] to take tangible employment actions against [Plaintiff]" the quid pro quo claim fails. *Vance*, 570 U.S. at 424. The Court will therefore grant summary judgment to Trinity.

IV. <u>State Law Claims</u>

Last, the Court has exercised supplemental jurisdiction over the assault and battery claim against Doctor Vettraino and the IIED and ELCRA claims against all Defendants. ECF 1, PgID 17–25. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which is has original jurisdiction[.]" 28 U.S.C. § 1367(c). Generally, district courts should decline to exercise supplemental jurisdiction over state law claims when all federal law claims have been dismissed from the case before trial. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court

13

should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims.").

The Court will therefore decline to exercise supplemental jurisdiction over the state law claims. For one, the Court lacks original jurisdiction over the claims. And two, the interests of judicial economy do not override the presumption against retaining the case because the Court lacks the strong familiarity with the case that it would have ordinarily gained had the undersigned been assigned the case from the beginning. *See Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). Thus, the Court will dismiss the state law claims without prejudice. Because the Court is declining to resolve the state law claims on the merits, the Court will deny summary judgment to Defendants on the state law claims.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Infinity Primary Care's motion for summary judgment [23] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Trinity Health Corporation's motion for summary judgment [25] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Title VII claims against all Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the state law claims against all Defendants are **DISMISSED WITHOUT PREJUDICE**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III<br>
STEPHEN J. MURPHY, III<br>
United States District Judge

Dated: February 25, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 25, 2021, by electronic and/or ordinary mail.

s/ David P. Parker<br>
Case Manager